Mary J. MONTEER, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 82–0349–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Nov. 18, 1982.

Title XVI of the Social Security Act since February or March, 1979 (Tr. at 52). Her husband, a fully insured wage earner, died on January 3, 1979. On January 26, 1981, she applied for Widow's Insurance benefits under Title II of the Act alleging that she has been disabled since at least January 1, 1979. After that application had twice been denied on the basis of findings of "review physicians," *see* Tr. at 74, 83, plaintiff filed for a hearing on April 7, 1981. That hearing, at which plaintiff was represented by counsel, was conducted on August 11, 1981. On November 25, 1981 the Administrative Law Judge (ALJ) found that plaintiff was not disabled within the meaning of 42 U.S.C. § 423(d)(2)(B). The Appeals Council denied review on April 6, 1982 and the ALJ's decision thus stands as the "final decision" of the Secretary under 42 U.S.C. § 405(g).

A final decision of the Secretary is "conclusive" provided it is based upon facts which are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).

James Marshall Smith, Kansas City, Mo., for plaintiff.

Robert G. Ulrich, U.S. Atty., Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

ORDERS GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE WITH DIRECTIONS TO DISTRIBUTE BENEFITS

JOHN W. OLIVER, Senior District Judge.

This Social Security case, filed pursuant to 42 U.S.C. § 405(g), pends for review of the final decision of the Secretary on cross motions for summary judgment.

## I.

Plaintiff has been receiving Supplemental Security Income (SSI) benefits under

## II.

On January 30, 1979, apparently for purposes of plaintiff's application for SSI benefits, Dr. Merritt Friche—plaintiff's treating physician for the past ten years—submitted a report on forms supplied by the Social Security Administration (SSA). In answer to the specific questions posed on those forms, Dr. Friche described plaintiff's then current status as "ectopic ventricular contractions, chronic obstructive lung disease, bronchial asthma, frequent bouts of pneumonia" (Tr. at 101). His diagnosis was "Cold. Myocardial ischema, ectopic ventricular beats, asthma." Prognosis—"progressive." Under the heading "work restrictions," Dr. Friche stated that plaintiff was then "unable to work due to asthma, frequent episodes of pneumonia and angina" and could walk but "2 blocks." The report was also accompanied by a completed Social Security Administration form indicating Dr. Friche's "description of chest pain" and by an "electrocardiographic report."

Dr. Friche's diagnosis and prognosis have proven accurate for, as the ALJ noted, plaintiff was subsequently treated in April, 1980 for chest pain of two days duration diagnosed as "chronic obstructive pulmonary disease, acute bronchitis and early congestive heart failure" (ALJ's report at 3); hospitalized on November 1, 1980 for shortness of breath and substernal pain diagnosed as "angina, chronic bronchitis, chronic obstructive pulmonary disease, and anxiety reactions" (id.); hospitalized from June 23, 1981 to June 29, 1981 "with primary diagnosis of chronic obstructive pulmonary disease and asthma. Secondary diagnosis included cardia arrhythmia, congestive heart failure, hypothyroidism, and osteoarthritis" (id. at 4); and hospitalized from September 6, 1981 until September 13, 1981 for treatment of "pneumonitis," (Id.)

In February 1979, again for SSI purposes, plaintiff was referred by the SSA to Dr. Emery Calovich for a consultative examination. In his report dated February 12, 1979, Dr. Calovich stated that plaintiff "alleges she had pneumonia some sixteen years ago" (Tr. at 105). The record indicates, however, that plaintiff was also hospitalized for pneumonia and pneumonitis in December, 1977 (Tr. at 90). Dr. Calovich also stated that plaintiff has "no history of ... bronchial asthma" (Tr. at 106). Compare Dr. Friche's report, Tr. at 101. With reference to plaintiff's complaints of pain, Dr. Calovich stated: "She states that the pain can be either a dull or sharp pain, and I could really not get more out of this woman. Actually, in her entire history she tended to be vague, but in an attempt to get the idea of a squeeze or heavy, dull or crushing type of pain or as if someone were standing on her chest, she denied all of these descriptions of this so-called 'pain'" (Tr. at 106). Chest x-rays indicated "chronic obstructive pulmonary disease" (Tr. at 109). Dr. Calovich also conducted "pulmonary function studies" wherein plaintiff's "effort and cooperation were considered good" (Id.) The results of those tests by themselves come quite close to the levels necessary to require a finding of disability within 42 U.S.C. § 423(d)(2)(B) (Tr. at unnumbered page following 110). See 20 C.F.R. § 400, et seq., Appendix 1, subpart P, Section 3.00, Table I. In conclusion, Dr. Calovich stated:

It is my impression clinically that this woman's basic diagnosis is that of chronic obstructive pulmonary disease. In addition to this diagnosis, the possibility of arteriosclerotic heart disease and angina pectoris are made for completeness' sake. I think the only way that this could possibly be proven as far as the angina and the heart disease are concerned would be treadmill and catheterization studies. The other problems that she has involving her lower back I think probably are lumbosacral strain problems, and the knee on the left side and the finger problem may be arthritis, both osteoarthritis, perhaps mixed inflammatory arthritis. However, I think over all the most difficult problem that she has at the present time is her chronic obstructive pulmonary disease, and I think since the loss of her husband in this past year that this has been aggravated by a great degree of anxiety tension and depression. [Tr. at 109–110]

On January 6, 1981, Dr. Friche wrote a letter as follows:

To Whom It May Concern:

REF: Mary Monteer

The above named patient is under my care and in my opinion has been totally disabled since before 12/1/80 due to Chronic Obstructive Lung Disease, Bronchial Asthma, Congestive Heart Failure and arthritis. [Tr. at 133]

On February 13, 1981, plaintiff was again referred by the SSA to Dr. L.A. Hollinger for a second consultative examination. In his report Dr. Hollinger stated: "There is a history of pneumonia in April, 1980 and she was hospitalized at Lakeside Hospital for that problem.... She has been hospitalized in the past for some chest pain, but has never been told she had angina. There is no medical history of myocardial infarction or hypertension, but she does take medication for an irregular heart beat. She has a history of a hiatal hernia four years ago

and is currently taking medication for that problem. She describes anthralgia for her hands, legs, knees, and back, and is on Motrin to control that pain." He described plaintiff as "a well-developed, well-nourished, white female who was alert and cooperative" (Tr. at 134–35). Routine pulmonary function studies were performed, the results of which were similar to those obtained by Dr. Calovich. Dr. Hollinger concluded:

> In summary this patient appears to have a clinical diagnosis of chronic obstructive pulmonary disease compatible with chronic bronchitis. She is on a bronchodilator program, but is continuing to smoke. According to the AMA Expert Committee for the Rating of Respiratory Impairment she would be given a Class IV or 50–70% impairment. It would appear that she would have considerable difficulty performing any work which would require a moderate amount of exertion.
>
> At this time I am unable to establish any significant cardiac disease. She has a past history of chest pain and was hospitalized for this problem in the past. Her current EKG does not show any evidence of ischemia, but could suggest some right atrial overload reflecting her underlying chronic lung disease. No impairment is given for this change. [Tr. at 135]

More than a month later, on March 17, 1981, plaintiff's treating physician, Dr. Friche, completed a second report on an SSA form. In that report he indicated that plaintiff has an esophageal hiatal hernia and also provided information as to her arthritis. Once again, his diagnosis was "progressive" (Tr. at 140). On July 4, 1981, Dr. Friche wrote a second letter in which he stated as follows:

> Mary Monteer has been a patient of mine since March, 1969. She suffers from Chronic Obstructive Airway Disease and Congestive Heart Failure, both of which are complicated by Hypertension, Cardiac arrhythmia, Asthma, and repeated episodes of bronchitis and pneumonia.
>
> As you know, she is presently in the hospital for these above conditions. The

frequency of these hospital stays are approximately 3 to 4 months apart. These conditions necessitate continual ingestion of Digatalis, Pronestyl, Theodor, Valium, and repeated series of antibiotic therapy. In addition to these hospital stays, it is necessary for her to be seen in my office 2 or 3 times every month.

> She also is a victim of generalized osteoarthritis necessitating anti-inflammatory therapy consisting of Indocin and mild pain relievers.
>
> It seems to me that it is impossible for her to be gainfully employed due to repeated episodes of dyspnea due to the above conditions as well as continual arthritis pain. [Tr. at 142]

At the hearing conducted on August 11, 1981, plaintiff testified that her major physical problems are "obstructed lung disease ... and arthritis;" that she has "had bronchial asthma all my life, and it got worse when I had pneumonia ... about ten years ago.... And each time it gets worse" (Tr. at 37). She stated that:

> I can't walk. I can walk two blocks and have to stop five or ten minutes to go any further. I cannot do my heavy scrubbing. My daughter does that. She vacuums the rugs. She does all the heavy housework that there is to be done. I do try to help with the dishes and do my cooking. [Tr. at 38]

She further testified that the weather affects her condition and she cannot breathe on rainy days (Tr. at 39). She described the pain associated with her chest ailment as "stabbing pains and then sometimes it goes down my left arm" (Tr. at 45). She testified that emotional upset aggravates her condition; that she has arthritis in her back and legs (*id.*) and a "hiatal hernia" which is aggravated by certain foods (Tr. at 48). She testified that she is nervous, takes Valium for her nerves and cannot sit in one position for over one hour (*Id.*) Plaintiff described her activities on a typical day as follows:

> A. Well, I usually get up and take my medicine every morning and then I try to help a little, so as I can, with my work, which is very little.

Q. Do you help with the cooking?

A. Yes.

Q. Do you help with the cleaning?

A. I do the dishes, and there's times I wash. The days that I can fairly halfway breathe, I try to wash." [Tr. at 24] She testified that she can take the bus, "but I have to stop on the way to the bus stop [because of] the walking and the shortness of breath." In answer to a question by the ALJ, plaintiff indicated that she smokes "about a pack a week now" reduced from "about a pack every two days" (Tr. at 52). She also stated that since she has been receiving SSI benefits, her condition has deteriorated so that "I'm getting to where I can't get near around."

Plaintiff's daughter testified that "On a good day [plaintiff] might be able to do part of the dishes." If she pushes herself too much, however, "she usually ends up in the hospital" (Tr. at 55). Caroline Cope, a good friend of plaintiff, testified that plaintiff "can't do any of her housework." In answer to the question whether there is "a particular type of chore that gives her problems," Ms. Cope answered: "All of them. I usually take her grocery shopping. I rush through mine to go finish hers because she usually has to stop" (Tr. at 59).

### III.

In denying plaintiff's application for Widows Insurance benefits the ALJ reasoned as follows:

In order to be found "disabled" for purposes of entitlement to widows insurance benefits, the evidence must establish impairments which meet or medically equal impairments listed in Appendix 1, subpart P of Regulations No. 4 of the Secretary. The Administrative Law Judge has carefully reviewed the impairments listed therein, and finds no impairment which claimant's impairments, either singly or in combination, meet or medically equal. In particular, claimant's respiratory impairments did not meet or equal any of those listed in Section 3 of the Listings. Her pulmonary function studies do not satisfy the requirements of Section 3.02, nor do the frequency of her exacerbations meet the requirements of Section 3.03. Likewise, the evidence does not establish any cardiovascular or musculoskeletal impairment meeting or equaling any of the impairments listed in Sections 4 and 1, respectively. Even considering combined effects of claimant's various impairments, the Administrative Law Judge cannot find that those impairments are so severe and extensive as to preclude all gainful activity.

In reaching this conclusion, the Administrative Law Judge has not ignored the testimony of severe impairments or the opinion of Dr. Fricke (sic) that claimant is disabled from gainful employment. Under Section 404.1529 of Regulations No. 4 of the Secretary, a finding of disability will never be based upon symptoms, including pain, unless medical signs or findings show that there is a medical condition that can be reasonably expected to produce those symptoms. The medical signs and findings in this case simply do not support allegations of symptoms so severe as to preclude all gainful activity. Furthermore, claimant's admitted daily activities reveal some residual functional capacity to perform gainful activity. In any event, the testimony of claimant's symptoms and physical restrictions resulting therefrom, was not credible or convincing in view of the manner and demeanor of the witnesses in giving that testimony.

The opinion of claimant's treating physician regarding her ability to engage in gainful activity is not binding upon the Social Security Administration under Section 404.1527 of Regulations No. 4. The Administrative Law Judge must review the medical findings and other evidence in support of that statement. As already mentioned above, the evidence does not support the conclusion reached by Dr. Fricke. Claimant's pulmonary function studies, chest x-rays, and electrocardiograms do not establish such severe impairments. Reports of physical examination also fail to reflect impairment which

would preclude all gainful activity. Although there is also some evidence of a moderate degree of degenerative arthritis, the evidence reflects that claimant's medications have provided significant relief of her arthritic symptoms.

Based upon the foregoing, the Administrative Law Judge finds insufficient evidence to establish any impairments, singly or in combination, which have met or medically equaled any of the impairments listed in Appendix 1, Subpart P of Regulations of the Secretary. Accordingly, claimant's application for widows insurance benefits must be denied. [Tr. at 18–19]

Plaintiff advances the following claims of error: first, that the Secretary never asked for or obtained any medical opinion as to whether plaintiff's medical impairments met or medically equalled the listings; second, that Dr. Calovich indicated the possibility of angina and heart disease (Tr. at 109–110), yet the Secretary never ordered the treadmill and catheterization studies which Dr. Calovich indicated were necessary to make a conclusive determination; third, that the ALJ's analysis as to the combined effect of plaintiff's impairments was inadequate under the circumstances; fourth, that the ALJ failed to give sufficient weight to the judgment of plaintiff's treating physician; fifth, that the ALJ misconstrued certain evidence in concluding that it did not indicate a severe impairment; sixth, that the ALJ may have overlooked certain evidence which supported plaintiff's position, notably the testimony of the lay witnesses; seventh, that the ALJ's expressed reasons for rejecting plaintiff's testimony were inadequate and not supported by the record; eighth, that the ALJ applied an erroneous standard with respect to disability; and ninth, that the ALJ gave insufficient consideration to plaintiff's subjective reports of pain.

■ Defendant argues that the ALJ's decision must be upheld because "a widow's claim of disability is judged solely by medical criteria, citing 20 C.F.R. § 404.1577, and "solely on the basis of medical evidence," citing 20 C.F.R. § 404.1526(b). That contention is entirely without merit. In this Circuit it has repeatedly been held that: "The Secretary must give some consideration to subjective complaints even though they are not necessarily corroborated by objective findings. To fail to do so is error." Brand v. Secretary of Dept. of Health, Educ. and Welfare, 623 F.2d 523, 526 (8th Cir.1980). The Court of Appeals has stated in no uncertain terms: "In evaluating whether a claimant is capable of engaging in any gainful activity it is essential that the Secretary view the individual as a whole. It is senseless to view several disabilities as isolated from one another. . . . These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being." Landess v. Weinberger, 490 F.2d 1187, 1190 (8th Cir.1974). Moreover, the need for objective medical evidence of pain must not be over-emphasized, Northcutt v. Califano, 581 F.2d 164, 166 (8th Cir.1978), most recently followed in Tucker v. Schweiker, 689 F.2d 777, 781 (8th Cir. 1982). It is apparent that the ALJ improperly emphasized the need for "medical signs and findings."

■ Defendant also argues that "the reports of Dr. Fricke (sic) were conclusory and contained no objective evidence to support his diagnosis." That contention is untenable. Dr. Friche's opinions were indeed supported by medical evidence including, but not limited to, ten years' personal treatment of the plaintiff. Those opinions are entitled to more, not less, weight than the reports of nonexamining physicians or SSA consultative physicians who have examined the claimant but once. McCoy v. Schweiker, 683 F.2d 1138, 1147 n. 8 (8th Cir. en banc 1982); Ragsdale v. Secretary of Dept. of Health, Educ. and Welfare, 623 F.2d 528, 530 (8th Cir.1980).

Dr. Friche repeatedly stated his clinical judgment that plaintiff is totally and completely disabled from any gainful employment. That judgment cannot be facilely overridden. Moreover, in this case Dr. Friche's judgment was not seriously contra-

dicted by the reports of the SSA consultative physicians. Dr. Calovich stated that "probably the only type of work this woman could possibly do would be light housekeeping" (Tr. at 110) and Dr. Hollinger stated that "It would appear that she would have considerable difficulty performing any work which would require a moderate amount of exertion" (Tr. at 135).

Defendant further contends that: "It has ... been held that the failure to stop smoking militates against a finding of disability where shortness of breath is alleged. *Hirst v. Gardner,* 365 F.2d 125 (7th Cir.1966); *Emler v. Califano,* 462 F.Supp. 109 (D.Kan. 1978)." However, in regard to an analogous problem of alcoholism, it has been held in this Circuit that benefits cannot be denied on that basis absent a finding that the problem can be voluntarily controlled. *Adams v. Weinberger,* 548 F.2d 239, 245 (8th Cir.1977). No finding as to voluntariness was made in this case.

 The ALJ's blanket dismissal of plaintiff's testimony based on the "manner and demeanor of the witnesses in giving that testimony" is not persuasive. Plaintiff's testimony was corroborated by the testimony of lay witnesses and indeed not seriously disputed by anyone. The ALJ's findings, far from being supported by substantial evidence in the record as a whole, tend rather to indicate a mechanical application of the List of Impairments. As stated in *Landess v. Weinberger,* 490 F.2d at 1190, "claimants are entitled to have their disabilities measured in terms of their total physiological well-being"—an admonition most recently repeated by the Eighth Circuit en banc in *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982). The principles stated in *McCoy* are applicable here. The List of Impairments may not be mechanically applied where multiple disabilities and subjective complaints are concerned.

We find and conclude that the List of Impairments was mechanically applied in this case. We further find and conclude that: "Reversal is appropriate in this case because a remand would serve no useful purpose. The record has been fully developed, and the overwhelming weight of the evidence supports [plaintiff's] claim." *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982).[1]

## IV.

For the reasons stated, it is

ORDERED (1) that plaintiff's motion for summary judgment should be and the same is hereby granted. It is further

ORDERED (2) that defendant's motion for summary judgment should be and the same is hereby denied. It is further

ORDERED (3) that the final decision of the Secretary should be and the same is hereby reversed and remanded with directions to distribute Widow's Insurance benefits to plaintiff in accordance with her application.

---

1. Thus, it is unnecessary to consider whether the Secretary's final decision could be upheld in light of the Secretary's failure to obtain medical evidence as to plaintiff's claims of angina and heart disease. *See Landess,* 490 F.2d at 1189 as to the Secretary's affirmative duty to adequately develop the record.