Owen L. GORDON, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.

No. 83–1552.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1983.

Decided Jan. 11, 1984.

Rebecca J. Bosley, Fayetteville, N.C. (Central Carolina Legal Services, Inc. on brief), for appellant.

Jason R. Baron, Dept. of Health and Human Services, Washington, D.C. (Kenneth W. McAllister, U.S. Atty., Benjamin H. White, Jr., Asst. U.S. Atty., Greensboro, N.C., on brief), for appellee.

Before RUSSELL, MURNAGHAN and CHAPMAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Owen L. Gordon appeals from a judgment of the United States District Court for the Middle District of North Carolina affirming the decision of the Secretary of Health and Human Services denying Gordon's application for social security disability and Supplemental Security Income (SSI) benefits. Concluding that the Secretary's decision is deficient in several critical areas, we vacate the judgment and remand this case to the district court with instructions to remand it to the Secretary for proceedings consistent with this opinion.

I.

Gordon filed applications for social security disability and SSI benefits. His claims were denied initially and on reconsideration by the Social Security Administration. Gordon then requested a hearing before an administrative law judge (ALJ) which was held on June 4, 1981.

Owen L. Gordon testified that he was born on January 9, 1936. He completed less than nine years of school. From the time Gordon was sixteen until June, 1980, he worked for a number of employers as a surveyor and draftsman.

Gordon said he quit working because his legs hurt and he could not carry his transit, a sixty pound surveying instrument. Also, Gordon's vision had deteriorated because of cataracts. In fact, Gordon said he had been criticized by his superiors because he could no longer draft neatly.

Gordon claimed that he could only walk about 200 yards before leg pains forced him to stop.

Although many of the medical reports in the record indicate that Gordon is an alcoholic and a heavy smoker, Gordon testified that he does not drink. Gordon did admit

to having smoked as many as three packs of cigarettes per day in the past. However, Gordon claimed he smoked only a half pack per day at the time of the ALJ's hearing.

Gordon was hospitalized in 1979 because of leg pains. He was hospitalized in 1980 for chest pains. The reports from the two hospital visits form the bulk of the medical evidence before the ALJ.

The medical reports confirm that Gordon has circulation problems in his legs. However, almost all of the doctors who examined Gordon found some pulses in his legs. The etiology of Gordon's chest pains was never discovered.

Gordon has cataracts over both eyes. The cataracts are the result of massive doses of cortisone administered to Gordon in the mid-1970s for dermatitis. Dr. Woody reported that Gordon's best corrected vision is 20/25 in the right eye and 20/200 in the left eye. When Gordon's pupils are constricted (*i.e.,* when the light is bright), his corrected vision drops to 20/40 in the right eye and 20/400 in the left eye. Woody reported that a Dr. Parkerson recommended that Gordon have cataract surgery but Gordon declined. Parkerson's scanty report does not mention any recommendation whatsoever.

In a decision dated June 30, 1981, the ALJ rejected Gordon's claim that he was completely disabled. The ALJ found that none of Gordon's physical problems, singularly or in combination, met the criteria for any automatically disabling impairment listed in the Secretary's Regulations. *See* 20 C.F.R. part 404, subpart p, app. 1 (1983). The ALJ then found that Gordon was capable of sedentary work. Notwithstanding Gordon's eyesight difficulties, a non-exertional impairment, the ALJ then used the Secretary's Medical-Vocational Guidelines (grid) 20 C.F.R. part 404, subpart p, app. 2 (1983), to come to the conclusion that Gordon was not disabled within the meaning of the Social Security Act.

The Secretary's Appeals Council considered additional medical evidence, but concluded that the ALJ's decision was correct. The Secretary's decision became final on December 23, 1981, when the Appeals Council refused further to review the case.

Gordon timely appealed to the United States District Court for the Middle District of North Carolina. A magistrate reviewed the record and concluded that the Secretary's findings were supported by substantial evidence. The magistrate did not find fault with the Secretary's use of the Medical-Vocational Guidelines, even though Gordon's vision was impaired, on the ground that Gordon had refused to follow prescribed treatment. The district court affirmed the Secretary's decision. An appeal followed.

## II.

The Secretary's disability regulations provide that the mere existence of certain diseases dictates a finding that a person is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1525(a). These diseases (*i.e.,* "listed impairments") are found in 20 C.F.R. part 404, app. 1 (1983). The regulations also provide that if a person's impairments do not exactly fit within the criteria for a listed impairment, the Secretary will determine whether the person's impairments are the medical equivalent of a listed impairment. 20 C.F.R. § 404.1526 (1983).

■ Gordon claims that the Secretary erred when he refused to consider his circulatory problems the medical equivalent of "Arteriosclerosis obliterans or thrombo-angitis with intermittent claudication and absence of peripheral arterial pulsations in the femoral, popliteal, dorsalis pedis and tibial arteries...." 20 C.F.R. part 404, app. 1 § 4.13(B) (1983). That string of jargon means a narrowing of arteries and restriction of blood flow to the legs. *See Steadman's Medical Dictionary* (5th ed. 1982).

Only one doctor's report, that of Dr. Plank, satisfies the listed requirements of § 4.13(B), which determines whether one has a disabling disease. All of the other reports found a pulse in at least one artery and some found pulses in more than one. Gordon argues that his cataracts, vision impairment, and unverified chest pain should make his condition medically equivalent to the foregoing listed impairment. They do not make his condition equivalent to the listed impairment, however; they are *other* disabilities. Gordon's medical equivalence argument appears to lack merit.

### III.

When a person's disabilities do not fit into the criteria for a "listed disability" the Secretary must evaluate the claimant's disabilities and determine whether they are of such severity that he cannot engage in any substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A) (1983). *See also Lewis v. Weinberger,* 541 F.2d 417, 420 (4th Cir.1976). The Social Security Administration has promulgated detailed regulations that take into account a claimant's physical condition, age, education, and work experience to assist ALJs in determining whether a person is disabled. Medical-Vocational Guidelines (grid), part 404, subpart p, app. 2 (1983).

■ When an ALJ uses the grid, the most important finding that the ALJ must make is what kind of physical activity the claimant can sustain. The ALJ in this case found that Gordon was capable of sedentary work,[1] plugged that finding into the grid, and arrived at the determination that Gordon was not disabled. Gordon challenges the ALJ's finding that he is capable of sedentary work.

---

**1.** 20 C.F.R. § 404.1567(a) provides:
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a cer-

The Social Security Act provides that the factual findings of the Secretary in cases such as this one are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).

■ Gordon was examined by several doctors. Their reports indicate that his legs became fatigued and that he had circulatory difficulties. The Secretary relied on the testimony of a non-examining medical advisor, Dr. Bruce, to come to his conclusion that Gordon was capable of sedentary work. This Court has said that the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. *Martin v. Secretary,* 492 F.2d 905 (4th Cir.1974); *accord Hall v. Harris,* 658 F.2d 260, 266 (4th Cir. 1981). However, we have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. *Kyle v. Cohen,* 449 F.2d 489, 492 (4th Cir.1971). Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, an ALJ's determination coming down on the side on which the non-examining, non-treating physician finds himself should stand. We cannot in the present case determine in which category the report falls because the ALJ failed to indicate the weight given to the medical evidence, some of which supported Dr. Bruce's testimony and some of which did not.

■ We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. *See, e.g., Myers v. Califano,* 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v.*

tain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Secretary,* 567 F.2d 258, 259 (4th Cir.1977). As we said in *Arnold:*

> The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

567 F.2d at 259. Neither the ALJ nor the Appeals Council indicated the weight given to the various medical reports submitted by the appellant. We therefore remand to the district court with instructions further to remand the case to the Secretary with directions to the Secretary to reconsider the case and to indicate explicitly the weight accorded to the various medical reports in the record.

Dr. Bruce, the non-examining medical advisor, mentioned that Gordon's condition was correctable with surgery. Many examining doctors reported that Gordon's condition would improve if he quit drinking alcohol and smoking cigarettes. The Secretary did not allude to the failures to follow prescribed treatment as a basis for denying benefits. However, the Secretary's brief argues that we should take the failures to follow prescribed treatment into account. Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.

■ The Secretary can deny benefits if a person unjustifiably refuses treatment. 20 C.F.R. § 404.1530(b) (1983). However, a denial of social security benefits based on Gordon's failure to have surgery would have been improper since the record shows, at the current stage at least, that he could not afford it. *See* part IV, *infra.* Where there is evidence of alcohol abuse, the Secretary must inquire whether the claimant is addicted to alcohol and has lost the ability to control its use. *Hicks v. Califano,* 600 F.2d 1048, 1051 (4th Cir.1979). Disability benefits cannot be denied because of a claimant's continued alcohol abuse if the claimant is unable voluntarily to stop drinking. *See Adams v. Weinberger,* 548 F.2d 239, 245 (8th Cir.1977). On remand the Secretary should ascertain the degree and nature of the claimant's alcohol abuse. Failure to quit smoking has been held to be a justifiable grounds for refusing benefits. *E.g., Henry v. Gardner,* 381 F.2d 191 (6th Cir.1967); *Hirst v. Gardner,* 365 F.2d 125 (7th Cir.1966). However, some recent cases have held that benefits cannot be denied for failure to stop smoking absent a finding that the claimant could voluntarily stop smoking (*i.e.,* was not addicted to cigarettes). *Monteer v. Schweiker,* 551 F.Supp. 384, 390 (W.D.Mo.1982); *Caprin v. Harris,* 511 F.Supp. 589, 590 (N.D.N.Y.1981). Smoking, like alcohol abuse, can be an involuntary act for some persons. We believe that allegations of tobacco abuse should be treated in the same fashion as allegations of alcohol abuse. On remand the Secretary should also ascertain the degree and nature of the claimant's cigarette abuse. The Secretary may only deny the claimant benefits because of alcohol or tobacco abuse if she finds that a physician has prescribed that the claimant stop smoking or drinking and the claimant is able voluntarily to stop.

### IV.

It is undisputed that Gordon suffers from poor eyesight because of cataracts. The Secretary applied the grid in Gordon's case and determined that Gordon was not disabled. Gordon claims that the grid should not have been used in his case since he suffers from poor eyesight.

■ The Secretary's regulations provide that the grid may not be fully applicable when a claimant suffers from a "nonexer-

tional impairment." 20 C.F.R., part 404, subpart p, app. 2, § 200.00(e) (1983). Sensory impairments, such as poor eyesight, are nonexertional. *Id.* The ALJ did not regard Gordon's sight difficulties as disabling because they could be corrected by surgery. The magistrate recommended acceptance of that conclusion on the ground that a claimant's failure to follow prescribed treatment will automatically result in a finding that he is not disabled.

■ The grid should not in this case have been resorted to since Gordon's vision is impaired. Gordon testified without contradiction that he would have had cataract surgery if he had had the money to pay for it. However, he has no health insurance or spare cash. The Secretary's regulations provide that a person should not be deemed to have achieved disabled status if he has refused to follow prescribed [2] treatment to cure or ameliorate the defect without a good reason. 20 C.F.R. § 404.1530(b) (1983). The regulations give five examples of good reason. Inability to pay is not listed among them. Nevertheless, medical care is neither free nor cheap in this country. Although progress has been made in providing affordable medical care to the needy and elderly over the past twenty years, many Americans are without the means or the opportunity to obtain necessary medical care. Social security disability and SSI benefits exist to give financial assistance to disabled persons because they are without the ability to sustain themselves. It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him. Social Security Ruling 82–59 does say that inability to pay for treatment is a good reason for a refusal to follow prescribed treatment.

■ Social Security Ruling 82–59 states that the claimant must show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause. Gordon did not do this. But, the ruling also provides that, before a person is denied benefits for failure to follow prescribed treatment, he will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so. The record discloses no provision of such an opportunity. This case, accordingly, should be remanded to the Secretary with instructions that Gordon be given the opportunity to show good cause for his failure to obtain treatment. If Gordon's failure is justifiable, the Secretary should then consider his eye problems in determining whether he is disabled (*i.e.,* the Secretary should not automatically use the grid).

We vacate the judgment of the district court and remand with instructions to remand to the Secretary for further proceedings in accordance with this opinion.

VACATED AND REMANDED.

---

2. The only report that mentions surgery says it was "recommended" by Dr. Parkerson. The Seventh Circuit makes a distinction between "recommended" and "prescribed" treatment—failure to follow recommended treatment is not a sufficient ground for denial of benefits. *See* *Cassiday v. Schweiker,* 663 F.2d 745, 750 (7th Cir.1981). For the purposes of this opinion we assume, without deciding, that the surgery was "prescribed." We leave for another day the issue presented to the Seventh Circuit in *Cassiday.*