**Ora E. CAROTHERS, S.S. #238–78–5236, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Defendant.**

**No. C–C–85–088–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

Dec. 19, 1985.

George L. Fitzgerald, Charlotte, N.C., for plaintiff.

Richard S. Poe, Asst. U.S. Atty., Charlotte, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

Ora E. Carothers, plaintiff, was born on July 9, 1947, and has a tenth grade education. In the past she was employed as a spinner in a textile plant.

On March 20, 1984, plaintiff filed for disability and supplemental security income alleging that she became disabled on August 17, 1981. In June, 1984, she amended the application to state that she became disabled in October of 1980. After an initial denial of benefits and a hearing, an administrative law judge (ALJ) denied the plaintiff's claim on September 26, 1984. On January 14, 1985, the Appeals Council declined to review the ALJ's decision. The plaintiff filed this complaint on February 5, 1985, seeking judicial review of the Secretary's final decision.

This court has jurisdiction to review the final decision of the Secretary to determine whether it is supported by substantial evidence. 42 U.S.C. § 405(g) and § 1383(c)(3). The definition of disability—the inability to engage in substantial gainful employment—is the same for both Social Security disability insurance benefits and SSI. 42 U.S.C. § 423 and § 1382(c).

## TESTIMONY AT THE HEARING

At the hearing, plaintiff testified that she had last worked in December 1982. She was a spinner in a textile plant but had quit because she could no longer do the work; she'd "just choke up and cough" (Tr. 23). She stated that her breathing problems have been with her for the last ten years and cause "the wheezing, the shortness of breath, the choking, the coughing, the throwing up, strangling" (Tr. 25). In addition, those problems prevent her from resting well at night; she must frequently get up and sit in a chair. She testified that in fact she can hardly do anything, that her husband and daughter do all the housework (id.).

Plaintiff stated that she always has a phlegm and congestion problem (Tr. 25). Aside from that, however, she has attacks of asthma. The attacks are set off by fumes, textile products, and chemicals (Tr. 26). They are worst in the fall and spring because she has allergies then also (id.). The cool weather is best.

Plaintiff testified that she cannot afford to see a doctor regularly and therefore goes to the emergency room when she has an attack (Tr. 27). She admitted that she is in good health otherwise and that the doctors have suggested therapy for her. She claimed that she cannot afford the therapy (Tr. 27–28).

Plaintiff said she cannot lift things because when she does "it feels like my lungs is going to pull in and it hurts me up in my chest" (Tr. 29). She said she can only take a few steps at a time but that she occasionally walks down the street (Tr. 29–30). She can dress and bathe herself (Tr. 31), and goes to church regularly (Tr. 30). She cannot sleep well at night since she "chokes up so bad" when she lies down (Tr. 32). Sometimes she tries to sleep in a chair. In the daytime she catches up with a nap (id.).

Plaintiff's mother and husband affirmed her story. The husband stated that plaintiff has many attacks at night and that sometimes they have to carry her to the hospital for oxygen and a shot (Tr. 35).

The last attack, he said, was about one month before the hearing (Tr. 36). He said the attacks seem to come more often as plaintiff gets older (*id.*) and that she has a bad coughing spell *every* day (Tr. 39).

The vocational expert testified that plaintiff had done semi-skilled work in a polluted environment, and could not return to that (Tr. 40–41). He testified that, considering plaintiff's age, education, and experience, and assuming the ALJ would find her able to do sedentary or light work on a sustained basis, there were jobs available that plaintiff could do (*id.*) Plaintiff could do benchwork—"assembly or disassembly, packing, unpacking, sorting" (Tr. 41).

## REVIEW OF THE MEDICAL EVIDENCE

Dr. Fred Owens saw the plaintiff on January 28, 1983, for the North Carolina Industrial Commission (Tr. 119). He found that plaintiff has had to go to the emergency room for treatment about every two months (Tr. 120). He found the plaintiff was easily fatigued and had trouble sleeping. He wrote:

Respiratory rate, 16; bilateral rales, rhonchi and wheezing heard. She has both inspiratory and expiratory wheeze. Her chest sounds terrible with secretions. Her wheezing is loose. Her breath sounds are normal in intensity. Percussion is normal.

(Tr. 121). Dr. Owens measured plaintiff's "1 second Forced Expiratory Volume" (FEV1) and her "Maximum Voluntary Ventilation" (MVV). He found a FEV1 of 1.26 (44% of predicted) and a MVV of 29 (26% of predicted) (Tr. 122). He found that after application of a bronchodilator, all parameters, except for MVV, worsened (Tr. 122). The MVV improved to 36 (32% of predicted) (*id.*). Overall, Dr. Owens judged plaintiff to be 40% impaired.

Dr. Richard Roberts examined the plaintiff on October 26, 1983. He noted that plaintiff had had an attack just two weeks earlier requiring injections at the emergency room (Tr. 137). He also found that she had shortness of breath and coughing after climbing one flight of stairs. He found her chest moderately hyperinflated with both inspiratory and expiratory wheezes throughout (Tr. 138). He got a FEV1 value of 1.35 (Tr. 138). He felt his findings compatible with *chronic asthma* with persistent airway obstruction. He recommended medication therapy (Tr. 138).

On April 9, 1984, the plaintiff was examined by Dr. T. Reginald Harris as a consultant (Tr. 145). He found that plaintiff went to the emergency room frequently for acute asthma attacks (Tr. 147). His pulmonary function studies produced a FEV1 of 1.03 and a MVV of 27.9. After application of a bronchodilator, those values increased to 1.57 and 33.7 (Tr. 150). He found this classic asthma and recommended vigorous treatment and avoidance of respiratory irritants and cessation of smoking (Tr. 151).

The record contains copies of several emergency room records. These show that the plaintiff was treated for asthma attacks on April 21, 1983 (Tr. 126); May 24, 1983 (Tr. 127–28); June 16, 1983 (Tr. 129); October 9, 1983 (Tr. 131); October 10, 1983 (Tr. 130); and October 13, 1983 (Tr. 132–34).

## SUMMARY OF THE ALJ'S DECISION

The ALJ found that the plaintiff's impairments were "severe" within the regulatory definition—an impairment or combination of impairments that "significantly limits your physical or mental ability to do basic work activities...." 20 C.F.R. § 404.1520(c) (1985). The impairments included bronchial asthma which the ALJ found "controllable by the general avoidance of respiratory irritants, the cessation of smoking, and the embarkation upon a vigorous program of treatment" (Tr. 10). These "severe" impairments nonetheless did not meet the conditions for disability contained in the listings of Appendix 1 of subpart P because the FEV1 and MVV tests improved on application of a bronchodilator enough to exceed the values in the regulations. In addition, the ALJ seemed to lay some stress on the fact that the

plaintiff's condition would improve considerably if she were to quit smoking.

The ALJ further found that the plaintiff was not working and could not return to her old job but, based on her age, education, and experience, she could do other work.

## DISCUSSION

The case should be remanded.

The ALJ committed error when he failed to consider whether plaintiff is disabled under the second part of the asthma listing. That part reads:

Episodes of severe attacks (see 3.00C), in spite of prescribed treatment, occurring at least once every 2 months, or on average of at least 6 times a year and prolonged expiration with sneezing or rhonchi between attacks.

20 C.F.R. 404, Subpart P, App. 1, § 3.03B (1985).

Plaintiff's evidence shows that in 1983 she had been to the emergency room for severe asthma attacks 6 times in 6 months. Her husband stated that at the emergency room she would receive oxygen and shots to remedy her condition. There was also evidence of sneezing and rhonchi between attacks. Therefore, plaintiff is disabled under this section unless these attacks did not occur in spite of treatment.

On remand, the ALJ must consider Section 3.03B and determine whether the attacks occurred in spite of prescribed treatment. To do this, he must first determine what the prescribed treatment was and second determine whether the plaintiff followed it. The plaintiff's failure to follow prescribed treatment, however, is justified and cannot be used against her under Section 3.03B, *if* she either cannot afford the treatment or does not have the ability to carry it out. *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir.1984). Consequently, as to bronchodilators, the ALJ must determine whether they were prescribed *and* whether the plaintiff could afford them. As to smoking, the ALJ must determine whether plaintiff was ordered to stop *and*

whether she had the ability to do so voluntarily. *Id.* If the ALJ finds that plaintiff cannot afford bronchodilators and cannot voluntarily stop smoking, her failure to take bronchodilators and to stop smoking is not a failure to follow prescribed treatment and cannot be held against her under Section 3.03B.

The ALJ's second error was his failure, in his analysis of whether plaintiff met the disability requirements of Section 3.03A, to consider the FEV1 and MVV measurements that were taken by Dr. Harris before application of a bronchodilator. Under Section 3.03A plaintiff would be disabled if her FEV1 and MVV measurements were less than or equal to 1.1 and 38 respectively. 20 C.F.R. 404, Subpart P, App. 1, §§ 3.03A & 3.02 (1985). The pre-bronchodilator measurements taken by Dr. Harris were 1.03 and 27.9 (Tr. 150); had these been used, the plaintiff would have been found disabled. The ALJ, however, used the post-bronchodilator measurements of Dr. Harris, which were FEV1 of 1.57 and MVV of 33.7, and, based on those post-bronchodilator measurements, found plaintiff not disabled under Section 3.03A.

The regulations indicate the measurements should be taken after application of a bronchodilator. 20 C.F.R. Part 404, Subpart P, App. 1, § 3.00D (1985). They apparently contemplate, however, that in some instances pre-bronchodilation measurements are more appropriate and should be used under Section 3.03A. One obvious situation where pre-bronchodilation measurements are more appropriate is where the applicant cannot afford to use bronchodilators regularly.

In this case, there was evidence that plaintiff could not afford therapies or a private doctor for her condition (Tr. 27–28, 145). If that is so, she may not be able to afford bronchodilators. If she cannot, a measurement of her breathing capacity after application of bronchodilators is not a fair appraisal of her breathing capacity generally. Therefore, on remand, the ALJ must determine whether the plaintiff can afford such drugs. If she can afford them,

the post-bronchodilation measurements are a fair appraisal of her normal breathing capacity and may be used in the Section 3.03A determination. If she cannot, however, the pre-bronchodilation measurements should be used, and the plaintiff should be found disabled under Section 3.03A.

## ORDER

IT IS THEREFORE ORDERED that the action is REMANDED to the Secretary for further proceedings consistent with this order.

This 17 day of December 1985.