991 F.2d 791
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donald STEWART, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-1930.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: January 21, 1993
Decided: April 21, 1993
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden, II, Chief District Judge. (CA-92-17-6)
 Elizabeth A. Corcoran, BARKAN & NEFF, Robert J. Dodd, Jr., REDMOND & JONES, for Appellant.
 Charlotte Hardnett, Acting Chief Counsel, Region III, William B. Reeser, Assistant Regional Counsel, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Michael W. Carey, United States Attorney, Carol A. Casto, Assistant United States Attorney, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Donald Stewart appeals the decision of the district court upholding the determination of the Secretary of Health and Human Services (the Secretary) that Stewart was not eligible for disability insurance benefits because he was able to perform much light and most sedentary work. Because we find the denial of benefits to be supported by substantial evidence, we affirm the judgment of the district court.
 
 I.
 
 2
 Stewart was born on September 8, 1942. A high school graduate, he took two years of business courses at a community college. His past work included driving a school bus, managing several gas stations, and, beginning in 1981, driving a truck in which he hauled crude oil.
 
 
 3
 Stewart applied for disability insurance benefits on August 11, 1989, alleging disability since an August 7, 1985, accident in which a rubber hose, which was filling his truck, struck him in the lower chest. Stewart alleged that he was disabled due to a back injury and sciatic nerve damage. Stewart's application was denied initially and on reconsideration. Thereafter, an administrative law judge (ALJ) conducted a formal hearing and determined that Stewart was not disabled.
 
 
 4
 On August 8, 1991, the Appeals Council declined to review the ALJ's decision. The Appeals Council later received additional medical evidence concerning Stewart's condition subsequent to the November 29, 1990, decision of the ALJ. The Appeals Council, however, determined that the new evidence was not relevant to the issue of whether Stewart was disabled on or before the date of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Secretary.
 
 
 5
 Stewart then filed the Complaint in this action. A magistrate judge recommended that the denial of benefits be upheld. The district court adopted the magistrate's recommendation and entered final judgment in favor of the Secretary.
 
 
 6
 On appeal, Stewart argues that the Secretary's decision is not supported by substantial evidence because the ALJ improperly evaluated Stewart's physical impairment and accompanying pain and that the Appeals Council improperly refused to consider the additional evidence submitted after the ALJ's decision.
 
 II.
 
 7
 Judicial review of a final decision regarding disability insurance benefits is limited to determining whether the findings of the Secretary are supported by substantial evidence. 42 U.S.C. § 405(g) (1988). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).
 
 
 8
 The ALJ makes factual determinations and resolves evidentiary conflicts, including inconsistencies in the medical evidence. Reviewing courts do not weigh evidence anew or substitute their judgment for that of the Secretary, provided that substantial evidence supports the Secretary's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).
 
 
 9
 The ALJ considers medical facts and opinions and the diagnoses of treating and examining doctors, which constitute a major part of proof in disability cases. McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983). In this Circuit, "the opinion of a claimant's treating physician [must] be given great weight and may be disregarded only if there is persuasive contradictory evidence." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).
 
 
 10
 The testimony of a non-treating, non-examining physician may be disregarded if it is totally contradicted by other evidence of record, but may be relied upon if it is consistent with the evidence. "Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, an ALJ's determination coming down on the side on which the non-examining, non-treating physician finds himself should stand." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).
 
 
 11
 In cases in which a claimant alleges a non-exertional impairment, including pain, the claimant must present medical evidence of a condition that could reasonably be expected to produce pain. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). If an ALJ finds complaints of pain or the magnitude of pain to be incredible, the ALJ must give specific reasons for his finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).
 
 III.
 
 12
 Neither party disagrees with the finding that Stewart's medical condition, which included chronic lumbar strain, obesity, osteoarthritis of the hands, mild emphysema, and diabetes not dependent on insulin, prevented Stewart from performing his past work, which required medium to heavy exertion. Instead, the focus of this appeal is on the Secretary's determination that Stewart retained:
 
 
 13
 the residual functional capacity to perform the exertional requirements of [light or sedentary] work except for sitting or being on his feet more than two hours at a time or six hours each during an entire eight-hour workday, lifting more than ten pounds frequently or 20 pounds occasionally, bending, stooping or kneeling frequently, climbing ladders, working on heights, or working near moving machinery.
 
 
 14
 None of the medical tests performed on Stewart over the years reveal any significant physical impairment. After his accident in 1985, Stewart had a relatively common mild bulging of the L4-L5 area but no herniation or ruptured disc. By 1986, a myelogram and a CT scan showed no disc protrusion. No nerve root damage was strongly suggested, and Stewart's reflexes were normal. While he had an antalgic gait, his gait was not unsteady. Tests in 1990 were essentially normal: Stewart's reflexes and straight leg raising test results were normal, and there was no atrophy. Relatively mild pain killers, which Stewart testified produced no significant side effects, usually controlled the pain that Stewart experienced. Every four to six weeks, however, these medications did not alleviate his pain, and he received an injection of a pain killer.
 
 
 15
 Doctors did note a decreased range of motion of the lower back and right extremities. Additionally, tests revealed a decreased sensation in Stewart's right lower extremities, as well as weakness in his hip flexors and the dorsiflexors of the right foot and great toe.
 
 
 16
 Stewart's daily activities did not suggest a disabling condition. Indeed, he performed the majority of the household chores, including cleaning, cooking, laundry, and washing dishes. He went up and down stairs between twelve and fifteen times each day. Stewart drove a car and did the grocery shopping. Occasionally, he mowed the lawn, although this task usually was accomplished over a two-day period.
 
 
 17
 In light of persuasive contradictory evidence, including the absence of objective medical findings and Stewart's extensive daily activities, the ALJ found that the physical capacity evaluations of Dr. Pease and Dr. Schreiber, the treating physician, exaggerated Stewart's physical limitations. The ALJ noted that no one with the impairments listed by either doctor could begin to perform the daily activities that Stewart testified he routinely accomplished. Although Dr. Schreiber was Stewart's treating physician, the ALJ was entitled to discount his evaluation because of the existence of this "persuasive contradictory evidence." See Coffman v. Bowen, 829 F.2d at 517.
 
 
 18
 The ALJ found that Stewart's pain was not as disabling as he claimed, and gave reasons for discounting Stewart's allegations. The ALJ noted the absence of objective medical evidence, Stewart's rather unrestricted daily activities, and the fact that Stewart generally took only mild pain medication to control his pain. This credibility determination, supported by substantial evidence of record, will not be disturbed. See Hays v. Sullivan, 907 F.2d at 1456; Hammond v. Heckler, 765 F.2d at 426.
 
 
 19
 While the ALJ discounted the amount of pain claimed, the ALJ did recognize that Stewart suffered from some pain. The testimony of a medical advisor as to Stewart's residual functional capacity was received. Taking into account all of Stewart's limitations, including the degree of pain which the medical advisor found to exist based on the evidence of record, the medical advisor concluded that Stewart retained the ability to lift and carry twenty to twenty-five pounds occasionally and ten to fifteen pounds frequently. Stewart could be on his feet two hours at a time and six hours per day, and could sit two hours at a time or six hours per day. Stewart retained the capacity to occasionally bend, stoop, and kneel. However, the medical advisor testified that Stewart was unable to work at heights, near moving machinery, or on ladders.
 
 
 20
 In light of the evidence, some of which (reports of Dr. Krivchenia and Dr. Guberman; Stewart's testimony) strongly suggested only mild impairments, and some of which (Dr. Pease and Dr. Schreiber) stated that Stewart was incapable of working, the ALJ was entitled to rely on the testimony of the medical advisor. "[I]f the medical expert testimony from examining and treating physicians goes both ways, an ALJ's determination coming down on the side on which the nonexamining, non-treating physician finds himself should stand." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).
 
 
 21
 It thus was entirely appropriate for the ALJ to adopt the finding of the medical expert as to Stewart's residual functional capacity. The ALJ then asked a vocational expert whether jobs existed in the regional economy which someone of Stewart's age, education, work experience, and functional capacity was capable of performing. The vocational expert listed a number of such jobs, including handpacker, gas station attendant, and cashier.
 
 IV.
 
 22
 The ALJ found, based on the medical evidence and testimony at trial, that Stewart was able, despite his impairments, to engage in substantial gainful activity and was therefore not disabled.* This decision was supported by substantial evidence. Accordingly, as our review of the record and other materials before us reveals that oral argument would not significantly aid the decisional process, we dispense with oral argument. The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 Our review of the three medical reports submitted after the ALJ's decision for consideration by the Appeals Council reveals that the Appeals Council properly declined to consider them. We note that the reports do not address with specificity Stewart's ability to perform substantial gainful activity as of the date his insured status expired. Considered in conjunction with the evidence before the ALJ, the reports do not change our conclusion that substantial evidence supports the Secretary's finding that Stewart was not disabled