**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1218

HOBET MINING, INCORPORATED,

Petitioner,

versus

HAROLD TERRY; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(05-0420-BLA; 06-BLA-1383)

Argued: November 30, 2006          Decided: February 8, 2007

Before WIDENER and WILKINSON, Circuit Judges, and David A. FABER,
Chief United States District Judge for the Southern District of
West Virginia, sitting by designation.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C., Charleston,
West Virginia, for Petitioner.  Kathryn Marie Speiker, Student
Caseworker, WASHINGTON & LEE UNIVERSITY, School of Law, Legal
Clinic, Lexington, Virginia, for Respondents. **ON BRIEF:** Kathy L.
Snyder, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for
Petitioner.  Mary Z. Natkin, Professor, WASHINGTON & LEE
UNIVERSITY, School of Law, Legal Clinic, Lexington, Virginia, for
Respondents.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is a case for compensation under the Black Lung Benefits Act (hereinafter "the Act"), 30 U.S.C. § 901 et. seq. The claim was filed by the now deceased miner. The claim was granted by the Administrative Law Judge ("ALJ"), and the decision was affirmed by the Department of Labor Benefits Review Board (hereinafter "the Board."). This petition for review followed. We have jurisdiction pursuant to 33 U.S.C. § 921(c) and 30 U.S.C. § 932(a).

## I.

The parties agree that the decedent, Harold L. Terry, was employed in various above-ground mining jobs for 26 years, and was in the employ of the respondent, Hobet Mining, Inc. Hobet does not dispute that it is the responsible operator for this claim. Furthermore, the parties agree that Terry did not suffer from clinical pneumoconiosis. The parties, however, disagree as to whether the decedent had legal pneumoconiosis within the meaning of the Act, so as to entitle him to benefits under the Act.

## A.

A brief description of the procedural history is warranted. A full description is given in the Board's decision, and we see no need to repeat it here.

2

Terry originally filed his claim on July 1, 1980. The claim was denied because the ALJ found that Terry failed to demonstrate total disability by a respiratory or pulmonary impairment. The ALJ's ruling was affirmed by the Board.

On October 18, 1993, Terry filed a second claim under the Act. This claim was denied because the ALJ found that Terry failed to establish a "material change in conditions as required by 20 C.F.R. § 725.309(d)." Within a year of the denial, Terry timely filed a request for modification pursuant to 20 C.F.R. § 725.310. The case was assigned to the present ALJ after the District Director of the Office of Worker's Compensation denied the modification request.

The claim has been adjudicated by the ALJ and appealed to the Board on four separate occasions. During each of the first three rounds, the ALJ awarded benefits and the Board vacated the findings, sending the matter back for reconsideration or clarification.

Finally, on January 25, 2005, the ALJ issued the present decision and order on remand. In that order he found existence of legal pneumoconiosis, and the presence of total disability. The ALJ once again awarded Terry benefits. Hobet once again appealed to the Board. This time, the Board affirmed the ALJ in all respects. This petition for review followed.

B.

The ALJ considered submissions a number of submissions by various physicians some of whom testified on behalf of Terry, and some of whom testified on behalf of Hobet. The following physicians testified for Mr. Terry: Drs. Rasmussen, Doyle, Cohen, Koenig and Figueroa. Drs. Zaldivar, Fino, Hippensteel, Daniel, Kress and Morgan testified for Hobet.

The ALJ evaluated each doctor's testimony separately and made findings of credibility with respect to each. Based on the testimony, the ALJ ruled that the Terry carried his burden to establish legal pneumoconiosis. In his analysis, the ALJ credited the opinions of physicians testifying on behalf of Terry over those testifying on behalf of Hobet. For the same reasons the ALJ credited the opinions of the physicians testifying on Terry's behalf and gave greater weight to them over opinions of those testifying on Hobet's behalf. He concluded that Terry was totally disabled.

Hobet challenges the findings made by the ALJ as irrational, not supported by substantial evidence, and contrary to law.

II.

We review the factual findings of the ALJ for substantial evidence. Thorn v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir. 1993). "[W]e undertake an independent review of the record, as in

4

the place of the BRB, to determine whether the ALJ's factual findings were based upon substantial evidence in the record." Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). We review legal conclusions de novo. Ballard, supra at 1193.

III.

A.

Prior to proceeding further, it is useful to define legal pneumoconiosis and describe how it differs from clinical pneumoconiosis. Both terms are well defined by the regulations adopted pursuant to the Act and appearing at 20 C.F.R. § 718.201.

(a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.

(1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis,

5

anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

(2) <u>Legal Pneumoconiosis.</u> "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

(b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment <u>significantly related to, or substantially aggravated by</u>, dust exposure in coal mine employment. (emphasis added)

20 C.F.R. §§ 718.201(a)-(b).

Thus, under the regulation, any respiratory disease arises out of coal mine employment provided the disease is either "significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

B.

Hobet's entire argument reduces to an attack on ALJ's credibility findings and overall weighing of the evidence.

We do not second-guess an ALJ's findings of credibility and his weighing of the evidence. See 33 U.S.C. § 921(b)(3) ("<u>The findings of fact in the decision under review by the Board shall be conclusive</u> if supported by substantial evidence in the record considered as a whole.") (emphasis added). Our role is simply to ensure that the ALJ considered all relevant evidence and reached a decision that was rational and sufficiently explained. See <u>Gordon</u>

6

v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984) ("Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'").

Hobet's principal argument is that ALJ's findings with respect to Drs. Rasmussen and Koenig are not supported by substantial evidence, because according to Hobet the testimony of these physicians is equivocal. To begin with, we have held that the use of less than certain language does not automatically disqualify the physician's opinion as equivocal. Perry v. Mynu Coals, Inc., ___ F.3d ___ (4th Cir. 2006) (Slip at 10). The entire statement must be read in context to determine whether the opinion is equivocal. This is again an area where we defer to the ALJ's factual findings. However, even if we were free to write on a clean slate, a fair reading of Dr. Rasmussen's opinion indicates that his use of the word possible was used to set up the overall predicate for his opinion which was in fact unequivocal. The same applies to Dr. Koenig's using the word could. And Dr. Rasmussen's opinion was supported by a breath diffusing capacity test.

Furthermore, even if we were to agree with Hobet that the testimony of Drs. Rasmussen and Koenig should not have been

7

persuasive, there is the testimony of Dr. Doyle.  The ALJ found that Dr. Doyle was persuasive and that in reaching his conclusions Dr. Doyle relied on studies published by the National Institute of Occupational Safety & Health.  This finding alone, if accepted, as it was, would be enough to conclude that the ALJ's opinion is supported, and ought to be affirmed.  The Board agreed that Dr. Doyle's opinion was "supportive of 'legal' pneumoconiosis."  J.A. 844.

Hobet's remaining attacks on credibility determinations and evidence weighing are equally unpersuasive.


C.

Hobet also argues that the ALJ "afforded the Claimant an invalid presumption that he has pulmonary impairment which is aggravated by coal dust exposure thereby relieving the Claimant of his 'obligation to affirmatively prove the presence of legal pneumoconiosis by a reasonable medical opinion.'"  Br. p.50.

We have examined the opinion of the ALJ and do not find any such presumption.  Because Hobet had raised exactly the same objection in its appeal to the Board which rejected the claim and held that the ALJ had "correctly placed the burden of proving the existence of legal pneumoconiosis on Claimant." J.A. 841.  Because we review the decision of the Board, even making the objection in the form stated in the brief, is, at the very best, hardly good

8

form.  The argument is entirely without arguable merit.  We affirm the decision of the Board.


D.

Hobet's next argument that the findings of total disability is erroneous as contrary to objective studies is "irrational, not supported by substantial evidence, and contrary to applicable law." Br. p.51.  It relies on bloodgas studies which did not meet the regulatory definition of disability.  The Code of Federal Regulation defines total disability as follows:

> (c)(1) Total disability due to pneumoconiosis defined. A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment.  Pneumoconiosis is a ''substantially contributing cause'' of the miner's disability if it:
> (I) <u>Has a material adverse effect on the miner's respiratory or pulmonary condition</u>; or
> (ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

20 C.F.R. § 718.204(c) (emphasis added).

The regulations do not require any particular objective values.  All that is required is that pneumoconiosis have a material adverse effect on the miner's condition.  Any argument that Terry should not be found to be totally disabled because his respiratory studies were outside the values set for total

regulatory disability from the studies is contrary to law and confuses two independent sections of the regulations.

IV.

From the opinion of the ALJ and the Board, it is clear that they did a comprehensive job addressing all of the evidence of record. The ALJ considered opinions of several experts, and voluminous medical records. The ALJ gave the reasons for his decision in a 28 page opinion in which he thoroughly explained why he credited certain physicians more than others. Understandably, Hobet disagrees with the ALJ's findings and believes that the evidence submitted by its experts should have convinced the ALJ. However, given the ALJ's thorough fact-finding, and the Board's reviews, it cannot be said that the decisions are irrational or that they failed to consider all evidence of record.

The Board's decision is summarized as "[a]ccordingly, we affirm the administrative law judge's finding that claimant's totally disabling respiratory impairment was due to pneumoconiosis, pursuant to 20 C.F.R. § 718.204(c) [footnote omitted]." We agree with the Board.

The petition for review is accordingly

DENIED.

10