Francis W. EMLER, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secy. of
Health, Education, and
Welfare, Defendant.

Civ. A. No. 78–1072.

United States District Court,
D. Kansas.

Nov. 8, 1978.

Dennis D. Ahlers, Legal Aid Society of Wichita, Inc., Wichita, Kan., for plaintiff.

Jon K. Sargent, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

Plaintiff brings this action to seek judicial review of the denial of his two claims for benefits, one for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., the other for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq. The denials are the "final decisions" of the Secretary and therefore this Court may undertake limited review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On January 5, 1977, plaintiff filed an application (Tr. 68–71) to establish a period of disability and to obtain disability insurance benefits, 42 U.S.C. §§ 416(i) and 423. The application received consideration and reconsideration by the Social Security Administration (Tr. 74–75, 78–79) and the claim was denied.

On May 9, 1977, plaintiff filed his application for supplemental security income disability benefits, 42 U.S.C. § 1381a. This application was also denied on reconsideration by the Social Security Administration on May 26, 1977 (Tr. 85–86).

On September 8, 1977, at plaintiff's request, a hearing was held, at which he and a vocational expert appeared and testified (Tr. 24–67). Plaintiff was represented by a Legal Aid Representative at the hearing. On September 27, 1977, the Administrative Law Judge [ALJ] made a determination unfavorable to plaintiff (Tr. 9–14). He found that plaintiff was not under a "disability" as defined in the Social Security Act, as amended. Thus, plaintiff was not entitled to a period of disability or to disability insurance benefits under 42 U.S.C. §§ 416(i) and 423, or to supplemental security income under 42 U.S.C. § 1381. On January 9, 1978, the Appeals Council of the Social Security Administration affirmed the hearing determination (Tr. 3). Thus, the determination of the ALJ stands as the final decision of the Secretary. This action was filed February 23, 1978. Plaintiff asserts that there is no substantial evidence to support the Secretary's decision, but rather, that the decision was contrary to the evidence.

The matter is before the Court on cross motions for summary judgment. Defendant has filed its motion based on the pleadings currently on file and the certified transcript of the record of the proceedings relating to plaintiff's claim. Plaintiff has waived oral argument by letter of his attorney, October 30, 1978. For reasons stated herein, we grant defendant's motion for summary judgment.

The facts are not in dispute. In summary, the transcript indicates that plaintiff was 55 years old when he appeared before

the ALJ. He is a high school graduate and many years ago had training in electronics and mechanics. Most of plaintiff's work experience has been of a moderately heavy, mechanical nature. He was in the Marines, and served as a tank mechanic and driver, repairman, gunner, and whatever else was needed. He has also worked in the aircraft industry in Wichita as an expeditor dealing with sheet metal and fabricated parts. He has also spent several years doing tool and die work, most recently with CECO, his last employer. He stopped working there in July 1975; he testified that this was because he could not do the 70 to 80 hours per week his employer demanded. He has had no employment since then.

Plaintiff testified about his physical condition at the hearing of September 8, 1977, before the ALJ. He stated that his hands and his breathing, and occasional blackouts [syncopal attacks], were his primary problems. He could no longer grip items properly, and had had surgery on his hands for this condition in January 1977. He did not recover full sensation or gripping ability, and is unable to do the heavy tool and die work any longer. His breathing was the reason he had to quit working, that this problem has existed 5 or 6 years and had worsened. If he has to move around much, he cannot get his breath, and has to stop and sit down. He used to smoke three packs of cigarettes a day, but on his doctor's suggestion, Dr. Gonzalez, he had cut down to ten cigarettes a day. He has not been able to quit entirely. Plaintiff also testified that he has frequent blackouts, several times weekly, of short duration, maybe five seconds. These happen without warning and are happening more frequently. Plaintiff testified that he had been to the employment service several times, though not in the last eight to nine months, but that the service wouldn't send him out on jobs when he was under a doctor's care and the doctor wouldn't release. He does not drive very often because of the possibility of a blackout. He had a heart attack in 1954.

In connection with his applications for benefits, plaintiff stated his physical prob-lems as a heart condition, hypertension, hyper-lipidemia, Type II, and chronic lung disease. (Tr. 68–71, 96–102).

The record indicates that plaintiff had back complaints in 1976. The Broadway Medical Clinic reported that plaintiff was not employable because of a limited range of motion in his left shoulder due to an earlier injury; the report was July 9, 1976. (Tr. 103) On July 16, 1976, Dr. Jan de Bakker, a surgeon, indicated that plaintiff was to be admitted to St. Francis Hospital for a gastrointestinal work up, and was not employable at that time. (Tr. 105) Plaintiff was hospitalized from July 18 to July 23, 1976; the final diagnosis was superficial duodenal ulcer. There was also evidence of mild hepatic dysfunction. He was discharged on no medication, to be followed up by Dr. de Bakker. (Tr. 106–113). On October 25, 1976, Dr. de Bakker reported that plaintiff should not resume normal working activities for two weeks. (Tr. 114).

On November 16, 1976, Dr. Francisco Gonzalez reported that plaintiff had hyper-lipidemia (an excess of lipids in the bloodstream). (Tr. 114). He stated that plaintiff could resume his previous activities in December, 1976.

The Social Security administration obtained a phone and a written report from Dr. Gonzalez after plaintiff filed his complaint. (Tr. 115–123). In the Code-A-Phone Report, January 12, 1977, Dr. Gonzalez noted plaintiff's complaints of anterior chest pain, numbness in both hands, and syncopal-like episodes [blackouts] on two or three occasions since 1973. The report stated:

Impressions: 1) Chronic obstructive lung disease with erythrocytosis, secondary polycythemia. 2) Hyper-lipidemia, Type II B acquired. We believe that Mr. Emler's most limiting condition is his chronic obstructive lung disease mediated by chronic and excessive cigarette smoking. The episodes of dizziness and perhaps syncope were caused by increased viscosity in blood as a result of the high hemoglobin and hematocrit [polycythemia]. This res-

piratory condition will prevent Mr. Emler from continuing in his present occupation, and, therefore, I would consider him disabled. With medication and without trauma from use of tobacco, his pulmonary function might improve and perhaps he would be able to resume his previous activities. He carries a mild hypertension, well controlled by Hydrochlorthiazide 50 mgm. per day and hyperlipoproteinemia, Type II B—managed with diet. The hypertension and hypoglycemia do not cause any target organ damage or disabilities.

In the Medical Report Form, January 11, 1977, Dr. Gonzalez diagnosed anxiety, chronic obstructive lung disease with erythrocytosis (secondary polycythemia), and hyperlipidemia—II B. He stated that dizziness was related to high blood viscosity, and that the prognosis was fair, since plaintiff continues to consume tobacco.

On January 19, 1977, plaintiff was admitted to St. Francis Hospital complaining of numbness and tingling in both hands. The final diagnosis was bilateral carpal tunnel syndrome. [The carpal tunnel is the osseofibrous passage in the wrist for the median nerve and the flexor tendons.] Plaintiff was operated on for this condition. He underwent right carpal tunnel release on January 24, and left carpal tunnel release on January 27. The hospital report notes that he did well postoperatively and was dismissed from the hospital on January 31, 1977, to be followed in the office by Dr. de Bakker. (Tr. 124–131). By letter of February 1, 1977, Dr. de Bakker reported that plaintiff would need approximately six weeks to fully recover from the operation.

A pulmonary function study done at the Wesley Medical Center on March 16, 1977, showed a clinical interpretation of "moderate reversible airways obstruction;" the ALJ took this to be in error in light of other reports and should have stated that plaintiff suffered from moderate *non-reversible* airway obstruction. Chest x-rays were within normal limits. (Tr. 133–135).

Two more medical reports were prepared by Dr. Gonzalez. On July 11, 1977, he opined that plaintiff was permanently unemployable due to chronic obstructive lung disease. (Tr. 136). On September 2, 1977, he wrote a letter with more complete opinion. (Tr. 145–146). He noted that plaintiff was thought to have had rheumatoid arthritis when he was stationed in Japan in the early 1950's. He also noted that the intensity of plaintiff's pain had not increased since 1973, when his complaints began, but that the frequency of shortness of breath and syncopal attacks has increased. Dr. Gonzalez mentioned his history of cigarette smoking. He stated:

In summary, the patient has chronic obstructive lung disease, probably secondary to cigarette smoking. I consider this patient totally disabled. He is not able to be engaged in a gainful activity due to limitations imposed by his respiratory system. As a result of this, the patient has a compensatory mechanism, high red cell count to improve oxygen delivery to the tissues. Therefore his blood is more viscose than normal and has a sluggish circulation time. As a result of this, the oxygenation to the brain is lower than normal and this explains his episodic blackouts.

The most important part of his management is the complete avoidance of cigarette smoking.

He was last seen in the office on August 9, 1977. His condition was basically unchanged and he was taking no medications at that time.

In summary, the patient carries a diagnosis of:

A. Chronic obstructive lung disease

B. Secondary polycythemia (increased red cell count)

and I consider him permanently disabled for these reasons.

The vocational expert, Eudora Goetz, heard plaintiff's testimony and examined medical exhibits. She was asked whether there were any jobs plaintiff could do assuming his age, education, and work experience, and assuming that he was restricted to light or sedentary work by his pulmonary condition which would also require a rela-

tively pollution free environment, and that the dexterity of his hands was reduced by at least 10 per cent. Goetz testified that plaintiff could work as a watchman or security officer at a hospital, loan company, or jewelry store where there are no physical demands. She also said that he could work as a desk clerk in a hotel, a cashier in a self-service gas station and as a truck or taxicab dispatcher. She stated that there were about 1500 of these light and sedentary type jobs in the area plaintiff lives. Plaintiff's Legal Aid representative asked whether an employer would hire plaintiff for any of these positions, and was advised that this was not the test. The ALJ also advised plaintiff that he was not there to answer the question of how plaintiff could work when his doctor wouldn't release him to go to work.

In his evaluation of the evidence, the ALJ noted that plaintiff has chronic obstructive non-reversible respiratory disease aggravated by cigarette smoking and that he had reduced his smoking but not stopped. He also noted the syncopal attacks, and that the respiratory disease combined with the other conditions precluded plaintiff from engaging in his previous occupations requiring moderate or heavy manual labor. However, he found that plaintiff's ailments are of insufficient severity to preclude him from engaging on a regular basis in the light and sedentary occupations enumerated by the vocational expert.

The requirements for a disability determination are statutorily created and are not in dispute. 42 U.S.C. §§ 416(i), 423, 1382c.

█ It is well settled that in reviewing a social security case of this kind, a court is not authorized to re-weigh the evidence; its limited function is to determine whether the Secretary's findings of fact are supported by substantial evidence and the inferences drawn therefrom are reasonable. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Trujillo v. Richardson,* 429 F.2d 1149 (10th Cir. 1970). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support the Secretary's con-

clusion. *Richardson v. Perales, supra; Johnson v. Finch,* 437 F.2d 1321 (10th Cir. 1971). The claimant has the burden of proving some medically determinable impairment which prevents him from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1) and (3); *Lucas v. Richardson,* 348 F.Supp. 1156 (D.Kan.1972). The question is not whether the claimant is unable to return to his previous work, but rather whether considering his age, education, and work experience, he is unable to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Relevant evidence includes objective medical facts, expert medical opinion, subjective evidence of pain and disability, and claimant's present age, educational background, and work history. *Keef v. Weinberger,* 404 F.Supp. 1193 (D.Kan.1975). A statement by a physician that an individual is or is not disabled and unable to work is a conclusion upon the ultimate issue to be decided by the Secretary, and is not determinative of the question of whether the claimant is disabled. The weight to be given such a statement depends on the extent to which it is supported by scientific and complete medical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment. 20 C.F.R. § 404.1526; *Lucas v. Richardson, supra.*

█ Plaintiff urges that the Secretary's decision is not supported by substantial evidence and that the Secretary has failed to show that plaintiff has the residual capacity to engage in any gainful activity other than his previous employment. In this regard, plaintiff asserts that the testimony of the vocational expert was invalid because the hypothetical did not include the assumption that plaintiff suffered from syncopal attacks, and that the jobs of security officer or watchman would be unavailable to him because of these attacks. He also asserts that there is no evidence that his mechanical skills would be transferable to the jobs that Eudora Goetz suggested. The Court notes, as defendant suggests,

that the vocational expert heard testimony of the blackouts, and that the ALJ recognized them, so that this complaint was not disregarded. Goetz testified that the jobs plaintiff was suited for preferred middle-aged men and would train. Even assuming that plaintiff would be incapable of performing the jobs of watchman or security officer due to the exertion, there was testimony of less demanding jobs such as desk clerk, self-service gas station cashier, or dispatcher. There is thus substantial evidence that there are substantial gainful activities for which plaintiff would be eligible. The Court is not bound by the opinion of Dr. Gonzalez that plaintiff is totally disabled. This opinion is based in part on the fact that plaintiff is still smoking. Both the respiratory ailment and the blackouts were connected to plaintiff's smoking habits, noted the doctor, and would improve if he quit. His physical problems are in part self-induced, therefore, and this militates against a finding of disability. *See e. g. Hirst v. Gardner,* 365 F.2d 125 (7th Cir. 1966). Furthermore, Dr. Gonzalez stated that he considered plaintiff disabled because his respiratory condition prevented plaintiff from continuing in his *present* occupation, (Tr. 118) and of course, the test is whether plaintiff is capable of *any* substantial gainful activity.

Plaintiff "urges" that he was limited in cross-examination by the ALJ. As defendant points out, the questions went to whether plaintiff would be hired, and this is not determinative of a disability finding. Therefore, that plaintiff was not permitted cross-examination in this area did not affect the Secretary's decision.

The Secretary's finding that Emler was not disabled from engaging in substantial gainful employment will be affirmed.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment be, and it is hereby, granted.