**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARY L. QANTU,

   Plaintiff-Appellant,

v.

JO ANNE BARNHART,

   Defendant-Appellee.

No. 02-1314
(D.C. No. 99-MK-1935 (PAC))
(D. Colo.)

---

**ORDER AND JUDGMENT***

---

Before **TACHA**, Chief Judge, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

   After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

   Claimant Mary Qantu appeals the district court's affirmance of the decision by the Commissioner of Social Security denying her applications for disability

---

*  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

benefits and supplemental security income. Because the agency's decision is supported by substantial evidence and no legal errors occurred, we affirm.

On January 10, 1995, claimant tripped on a rug at work and fell down a flight of stairs. Aplt's App., Vol. I at 121, 132. As a result, she suffered pain in her neck and back, numbness in her arms, and frequent headaches. *See id.* at 116-18, 119-120, 122-23. Claimant underwent several months of physical therapy and chiropractic treatment under the supervision of treating physician Hine, of the Southern Colorado Clinic. *See id.* at 114, 116; Vol. II at 280-81, 303-313.

In April 1995 Dr. Hine determined that claimant had reached maximum medical improvement and released her for work, limited by the requirements that she not lift more than thirty pounds, carry no more than twenty-five pounds, and lift no more than twenty pounds over her shoulders. *Id.*, Vol. I at 146, 148, 158. In May 1995 Dr. Hine referred claimant to Dr. Herrerra, at the Southern Colorado Clinic, for her headaches. *Id.* at 159. Upon initial examination, Dr. Herrerra agreed that claimant could return to work. *Id.* at 158. He prescribed medication and requested a CT scan of the head, which showed no abnormalities. *Id.* at 156, 158. Claimant continued to see Dr. Herrerra monthly for her headaches, and started monthly maintenance visits with Dr. Campbell after Dr. Hine left the clinic. *See id.* at 157. Dr. Campbell reiterated that claimant could return to work, subject to lifting restrictions. *Id.* at 146, 152, 157.

In April 1996 claimant experienced an exacerbation of her symptoms and returned to the Southern Colorado Clinic for treatment. *See id.* at 139-140. Claimant was sent back to physical therapy. *See id.*, Vol. II at 299-302. By the end of April, claimant reported to her physical therapist that she had no specific complaints of pain and that she had gone hiking in the mountains. *Id.* at 292. In May 1996 treating physician Campbell reiterated that claimant could return to work limited only by the restrictions described above. *Id.* at 273-74.

In July 1996 claimant began treatment with Kevin Boehle at the Southern Colorado Clinic. *Id.* at 386-387. Examination revealed tissue texture changes and muscle spasms in claimant's neck; trigger points along her spine, and tenderness in the lumbar spine with chronic tissue changes consistent with chronic muscle spasm and irritation. *Id.* at 386. Current x-rays showed some chronic arthritic changes in the neck and lower spine. *Id.* at 385, 387. Claimant was referred to Dr. Crawford for trigger-point injections and an EMG to evaluate her left arm numbness. *Id.* at 386-87.

Dr. Crawford's physical examination of claimant's back showed normal gait; negative Romberg; normal spine curvature with no thoracic or lumbosacral tenderness; full lumbar flexion and extension; and twenty-five degrees of lateral bending without pain. *Id.* at 282. She had a tender nodule in the left mid-gluteal muscle, and bilateral tenderness, but no sciatic notch or posterior thigh

tenderness. *Id.* Her cervical spine was tender, but without spasm or nodules, her cervical flexion and extension were limited, and right and left rotation caused pain. *Id.* Claimant had a scapular myofascial pain nodule and mild right lateral scapular tenderness. *Id.* Her shoulders had a full range of motion without pain, normal strength in her upper extremities except for some weakness of pinch of the left fifth finger and thumb, and her lower extremities were normal. *Id.* Dr. Crawford opined that claimant had bilateral parascapular and left gluteal myofascial pain syndrome, and that the myofascial pain syndrome was causing her headaches, but that her subjective symptoms seemed out of proportion to the physical findings. *Id.* at 283. The EMG showed left carpal tunnel, recurrent, or possible residual changed from her original surgery in 1980. *Id.* at 285.

Dr. Boehle treated claimant through the end of August 1996. Based on his treatment of claimant, Dr. Boehle concurred with the opinion that claimant could return to full-time work subject only to the lifting restrictions described above. *Id.* at 372-73, 378. He opined that she had reached maximum medical improvement for all medical conditions stemming from her accident, and that any other problems she was having were from previous or underlying conditions. *Id.* at 367. He also opined that claimant was showing strong tendencies of drug-seeking and inappropriate behavior with the staff. *Id.*

In March 1997 claimant presented at the Parkview Episcopal Medical Center for a headache with nausea and photophobia. *Id.*, Vol I. at 194. She underwent a CT scan which was negative, and was given medication which resolved her headache. *Id.* at 195, 196. In April 1997 she returned for a lumbar spine x-ray, which showed some evidence of degenerative disc disease with space narrowing at L4-5 and L5-S1, but no acute abnormality. *Id.* at 192.

In April 1997 claimant underwent a consultative examination with Dr. Gaudio. *See id.* at 160-64. Physical examination revealed that all ranges of motion were within normal limits; straight leg raising was negative; Phalen's and Tinel's tests were negative; there were no joint effusions or abnormalities; and claimant had normal muscle tone and strength, with no spasms or loss of sensation *Id.* at 162-63. Claimant showed no abnormalities on the mini-mental status test, and did not appear to have any deficits in concentration. *Id.* at 163. Dr. Gaudio found "no evidence of impairment-related physical limitation with regard to her low back pain or left shoulder blade pain"; "no evidence to support the diagnosis of carpal tunnel syndrome"; and no evidence to support claimant's complaint that she has trouble concentrating. *Id.* He concluded that based on the objective evidence, claimant had no physical or postural limitations. *Id.* at 164.

Claimant also began treatment for depression at the Spanish Peaks Mental Health Center (SPMHC) in April 1997. *Id.* at 185-86. Claimant was assessed

with a Global Assessment of Functioning score of 70, *id.* at 186, which is defined as "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 32 (emphasis deleted). Claimant was treated with antidepressants and therapy, first weekly and then every other week, through February 1998. Aplt's App., Vol. I at 166-186; 201-215. Treatment notes indicated that her depression stemmed primarily from domestic issues including a custody battle with her ex-husband and difficulties with her children. *See e.g., id.* at 168, 174, 177, 185, 206-212.

In February 1998 claimant underwent a consultative psychological examination with John Clarke, who administered psychological tests known as the MMPI and the Zung Self-Rating Depression Scale. *Id.* at 217. Dr. Clarke reviewed claimant's physical and mental health records and interviewed claimant. *Id.* Based on his review and the test results, Clarke opined that claimant's depression was severe to extreme, and that she was "presently psychologically disabled." *Id.* at 219-20.

Claimant filed for benefits in the spring of 1996, alleging an inability to work after January 10, 1995, due to a cervical strain, fibromyalgia, depression,

and headaches. *Id.* at 72. After her applications were denied at the first and second administrative levels, she participated in a hearing before an administrative law judge (ALJ) in April 1998. *See id.*, Vol. II at 397-453. Claimant was represented by counsel at the hearing.

On August 21, 1998, the ALJ issued her decision, finding that although claimant could not return to her former work as a nurse's aide, she retained the ability to perform a significant number of jobs and therefore was not disabled. *See id.*, Vol. I at 15-23. The ALJ found that claimant retained the physical ability to do light work that did not require lifting more than thirty pounds, carrying more than twenty-five pounds, or lifting more than twenty pound above the shoulders. *Id.* at 22. She found that claimant was mentally limited to simple unskilled work involving occasional interactions with the public. *Id.* The ALJ also determined that claimant's mental condition slightly limited her daily activities, moderately limited her ability to maintain social relationships, seldom caused deficiencies of concentration, persistence, or pace, and never caused an episode of deterioration or decompensation in work or a work-like setting. *Id.* at 25-26. The Appeals Council denied review, making the ALJ's determination the final decision of the Commissioner. The district court affirmed, and this appeal followed.

We review the Commissioner's decision to determine only whether it is supported by substantial evidence and whether legal errors occurred. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "that which a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). We may not reweigh the evidence or substitute our judgment for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Claimant argues that the ALJ committed legal error by disregarding her objective medical evidence of carpal tunnel syndrome, left ankle neuropathy, and back spasms, and her psychological test results. We have held that "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, it is clear the ALJ considered the evidence identified by claimant, but concluded that it did not support a finding of disability. *See* Aplt's App., Vol. I at 17 (finding the medical evidence did not establish that claimant's carpal tunnel compromised her residual functional capacity); at 18 (considering reports by Dr. Boehle, who noted claimant's spasms but concluded that she could return to full-time work with certain lifting and carrying restrictions); at 19 (considering psychological test results but rejecting

the consulting psychologist's conclusion).  Although the ALJ did not specifically refer to claimant's ankle neuropathy, there is no evidence that this condition limited claimant's abilities.

Claimant next challenges the ALJ's assessment of her nonexertional impairments of pain, depression, and reduced grip strength in her left hand.  Our review of the ALJ's decision reveals that she properly discussed the relevant evidence, including claimant's medical records, frequency of medical contacts, daily activities, pain medication, and motivation, in determining that claimant's pain, depression, and weakness were not disabling.     *See Kepler v. Chater*  , 68 F.3d 387, 391 (10th Cir. 1995) (discussing factors ALJ should consider).

The ALJ's primary reason for rejecting claimant's complaints was that they were not fully credible.    *See* Aplt's App., Vol. I at 17-18, 20-21 (rejecting complaints of disabling pain, weakness, and depression because they conflicted with record evidence and claimant's other statements).  As required, the ALJ affirmatively linked her credibility findings to substantial evidence in the record. *See id.*  at 18 (complaints conflicted with treating physicians' consistent opinions that claimant could return to work); at 19 (treating mental health source's records assessed claimant's functional limitations as mild, noted claimant's half-hearted attempt to find work, and described claimant's own reports of improvement); at 20 (describing claimant's reports to several sources that her conditions had

improved with only occasional problems); and at 20-21 (relying on treating physician's opinion that claimant's symptomology was not consistent with her clinical presentation, that claimant was showing strong tendencies of drug-seeking behavior; and that further treatment was not indicated). Because credibility determinations are within the province of the ALJ, we will not upset such findings where, as here, they are supported by substantial evidence. *Kepler*, 68 F.3d at 391.

Further, it is clear from the ALJ's decision that she accepted that claimant suffered some pain, but found that her pain was not disabling. We emphasize that a claimant's inability to work pain-free, standing alone, is not a sufficient reason to find her disabled. *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

Claimant also argues that the ALJ erred in rejecting the opinion of consulting psychologist Clarke. The ALJ rejected the opinion that claimant was "psychologically disabled" because Dr. Clarke did not provide any functional assessment of claimant's abilities; because the opinion was contrary to the opinion of claimant's treating source; and because Dr. Clarke was a consulting source who only saw claimant one time. Aplt's App., Vol. I at 19-20. As these are legitimate bases for rejecting a source's opinion, we find no error.

The judgment of the district court is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge