Mary J. COLE, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. CIV.A. 02–2631–GTV.

United States District Court, D. Kansas.

Nov. 26, 2003.

Patrick H. Donahue, Midland Professional Associates, Lawrence, KS, for Plaintiff.

David D Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

### *MEMORANDUM AND ORDER*

VanBEBBER, Senior District Judge.

Plaintiff Mary J. Cole brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") to deny her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. Plaintiff claims that she is impaired by a nonhealing fracture of her left wrist and a heart condition. She has a high school education and training as a certified nurse's aide. Her past work experience includes employment as a laundry worker, a trainer for mentally handicapped individuals, and a certified nurse's aide.

This appeal focuses on the Commissioner's determination that Plaintiff's left wrist and heart condition were not disabling. Plaintiff contends that the Commissioner

improperly weighed her treating physicians' opinions, inaccurately determined her residual functional capacity, and misjudged her credibility. For the reasons set forth below, the court affirms the Commissioner's decision.

## I. Procedural Background

On January 2, 2001, Plaintiff filed applications for disability insurance benefits and supplemental security income benefits, alleging that she became disabled on February 22, 2000. The applications were denied both initially and upon reconsideration. At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on April 2, 2002, at which Plaintiff and her counsel were present. On April 19, 2002, the ALJ rendered a decision in which he determined that Plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, Plaintiff requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on October 24, 2002 after considering additional evidence submitted by Plaintiff's attorney, rendering the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

The Commissioner's findings are binding on this court if supported by substantial evidence. 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. *Marshall v. Chater*, 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano*, 26 F.3d

at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the ALJ or the Commissioner. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992).

## III. The ALJ's Findings

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. §§ 404.1527 and 416.927).

7. The claimant has the residual functional capacity for work at the light exertional level, or work which requires lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, pushing or pulling up to 10 pounds frequently and 20 pounds occasionally, sitting up to 6 hours of an 8–hour day, and standing

or walking up to 6 hours of an 8–hour day. The claimant has nonexertional limitations precluding all ladder, rope, and scaffold climbing, as well as concentrated exposure to heat and cold. As a result of left arm limitations, the claimant is restricted to work not requiring more than frequent (as opposed to continuous or occasional) fine and gross manipulation.

8. The claimant is unable to perform any of her past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

9. The claimant is an "individual closely approaching advanced age" (20 C.F.R. §§ 404.1563 and 416.963).

10. The claimant has a "high school education" (20 C.F.R. §§ 404.1564 and 416.964).

11. The claimant has no transferable skills from any past relevant work (20 C.F.R. §§ 404.1568 and 416.968).

12. The claimant has the residual functional capacity to perform a significant range of light and sedentary work (20 C.F.R. § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of light work, based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that the claimant could perform. Examples of such jobs include work as a callout operator, with 40,000 such jobs in the national economy, 400 of those in Kansas, 50 in the Wichita area, and 20 in western Kansas; and order clerk, with 1,200,000 such jobs in the national economy, 2,250 of those in Kansas, and 350 in western Kansas; and an office helper, with 289,000 such jobs in the national economy, 2,630 of those in Kansas, and 525 in western Kansas.

14. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

### IV. Discussion

#### A. Treating Physicians' Opinions

■ Plaintiff first alleges that the ALJ failed to give controlling weight to Plaintiff's treating physicians' opinions. The court disagrees.

■ "A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Walker v. Apfel*, No. 97–1189–MLB, 1998 WL 928672, at *4 (D.Kan. Sept.18, 1998) (citing *Castellano*, 26 F.3d at 1029). If a treating physician's opinion is inconsistent with other evidence, the ALJ must determine whether the other evidence outweighs the treating physician's opinion. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995). In weighing any medical opinion, the ALJ must consider the following factors: (1) the "length of the treatment relationship and the frequency of examination"; (2) the "nature and extent of the treatment relationship"; (3) the amount of relevant evidence supporting the physician's opinion; (4) how consistent that opinion is with the rest of the record; (5) whether the physician is a specialist; and (6) other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ cannot disregard a treating physician's opinion that a claimant is disabled without giving legitimate and specific reasons. *Goatcher*, 52 F.3d at 290 (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)). But the ultimate responsibility for determining whether a claimant is disabled is reserved for the ALJ, not the treating physician.

*Castellano,* 26 F.3d at 1029 (citations omitted).

Only one of Plaintiff's physicians opined that Plaintiff was disabled. On August 28, 2002, after the ALJ rendered his decision, a physician's assistant signed a note "at the direction of" Dr. Joseph P. Galichia, stating as follows:

> Mrs. Cole has severe coronary artery disease. She has had chest pain in the past week at least 3 times. She has 4 stents in her heart. Our [sic] ECHO cardiography today, the heart shows abnormal wall motion or contraction. This alone indicates heart damage and heart disease.
>
> This patient cannot walk even 200' without stopping to rest.
>
> We consider her total[ly] disabled due to heart disease.

■ Plaintiff submitted this evidence to the Appeals Council. Although this information was not before the ALJ, "new evidence not considered by the ALJ but submitted to the Appeals Council and considered in denying a request for review becomes part of the administrative record and will be considered by the court." *Priddy v. Massanari,* No. 99–4195–DES, 2001 WL 1262702, at *1 (D.Kan. Oct.19, 2001) (citing *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994)). To be considered as part of the record, the evidence must relate to a period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

There is no indication whether Dr. Galichia had a treatment relationship with Plaintiff, and if so, for how long. The record contains no other medical records of visits with Dr. Galichia, and Plaintiff did not testify that she had ever seen Dr. Galichia. The court questions whether the opinion of Dr. Galichia should even be reviewed as one of a "treating physician." However, assuming that such review is appropriate, the Commissioner was not re-quired to accept Dr. Galichia's brief, conclusory statement of August 28, 2002, that Plaintiff is totally disabled. *See Castellano,* 26 F.3d at 1029 (holding that Secretary has final responsibility to determine disability and treating doctor's opinion may be rejected if conclusory and not supported by specific findings). The Commissioner need not give controlling weight to a physician's opinion unless "it is well supported by clinical and laboratory diagnostic techniques and . . . it is not inconsistent with other substantial evidence in the record." *Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir.1995). Dr. Galichia's note is conclusory and is inconsistent with other substantial evidence in the record, including the absence of restrictions imposed by Plaintiff's other physicians and Plaintiff's own self-reported activities. Moreover, it is not clear that the note relates to a time period before the date of the ALJ's decision. It refers to the week prior to August 28, 2002, and no other time period. The ALJ rendered his decision on April 19, 2002.

■ Dr. Galichia's opinion also went to the ultimate issue of disability, which is a determination reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2). The Commissioner is not bound to accept the conclusion of Plaintiff's physician on the ultimate fact of disability. *Emler v. Califano,* 462 F.Supp. 109, 113 (D.Kan.1978). For these reasons, the court concludes that the Appeals Council did not err in denying Plaintiff's request for review despite Dr. Galichia's statement that Plaintiff was disabled.

Plaintiff's only other treating physician who imposed work or activity limitations was Dr. Jonathon Loewen, an orthopedic surgeon who performed numerous surgeries on Plaintiff's left wrist. On February 22, 2000, Plaintiff presented to Dr. Loewen after falling and injuring her left wrist.

Dr. Loewen diagnosed Plaintiff with a left distal radius fracture with interarticular component. On February 23, 2000, Dr. Loewen performed surgery on Plaintiff's left wrist. The plate Dr. Loewen used in Plaintiff's wrist later fractured, and on March 31, 2000, Dr. Loewen again performed surgery on Plaintiff to fix the fractured plate. Over the next five months, Plaintiff returned for regular check-ups with Dr. Loewen, complaining of continued wrist pain. On August 31, 2000, Plaintiff underwent surgery for the third time. Finally, on November 17, 2000, Dr. Loewen opined that Plaintiff's wrist had reached maximum medical improvement. He gave Plaintiff a thirty-percent left upper extremity impairment rating, noted that she might need further surgery, and released her to return to work with instructions to avoid lifting over twenty-five pounds with her left arm.

Plaintiff returned to Dr. Loewen with wrist pain on May 31, 2001. On September 13, 2001, Dr. Loewen again performed surgery on Plaintiff to remove a plate from her wrist that was causing pain. On September 21, 2001, Dr. Loewen stated that he wanted Plaintiff to do one-handed work from an orthopedic standpoint. Plaintiff continued having wrist pain, and on February 6, 2002, after conducting tests to determine whether Plaintiff had carpal tunnel or ulnar neuritis, Dr. Loewen recommended closing Plaintiff's case because he believed that she had reached maximum medical improvement. At that time, Dr. Loewen gave Plaintiff the permanent restriction of lifting fifteen pounds with her left hand.

Plaintiff's other treating physicians did not indicate any activity limitations or recommendations. Plaintiff's cardiologist, Dr. Michael Blanc, began seeing Plaintiff after she was hospitalized for chest pain in October 2000 and underwent angioplasty with placement of four stents. Plaintiff was again hospitalized in December 2000 with an acute myocardial infarction and had additional angioplasty. After these incidents, Plaintiff repeatedly denied experiencing subsequent chest pains, but began to describe shortness of breath with exertion in September 2001.

Dr. Blanc did not recommend any work restrictions. To the contrary, on October 26, 2000, he encouraged Plaintiff to be as physically active as possible. Plaintiff also testified that Dr. Blanc did not tell her to restrict her activities because of her heart, but had instructed her to do "whatever [she] feel[s] comfortable" doing. Plaintiff visited Dr. Blanc every six months for routine follow up.

■■ Plaintiff argues that the ALJ improperly ignored several important medical findings, such as her recurrent angina, chronically occluded right coronary artery, left ventricle dysfunction, an S4 gallop, and chronic ischemic disease. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir.1996). Although the ALJ did not specifically refer to these elements of Plaintiff's heart condition, the record indicates that the ALJ fully considered her condition; he noted that Plaintiff's condition did not meet the criteria of medical listings 4.02B, 4.03, 4.04, 4.05, 4.07, or 4.08. Also, as noted above, there is no evidence that the condition limited Plaintiff's abilities. *See Qantu v. Barnhart*, 72 Fed. Appx. 807, 810–11 (10th Cir.2003).

The ALJ discussed the findings of Dr. Loewen and Dr. Blanc. Based on their diagnoses, he found that Plaintiff had severe medical impairments. He also included an appropriately modified version of Dr. Loewen's lifting restriction in Plaintiff's RFC. As will be explained in the following section, there simply were no

other restrictions recommended by a treating physician to include in the RFC. For these reasons, the court concludes that the ALJ properly weighed the treating physicians' opinions. The only opinion that is inconsistent with the ALJ's findings is that of Dr. Galichia, and the court has determined that it is not entitled to deference. The court affirms the ALJ's decision on the basis of his consideration of the treating physicians' opinions.

### B. Unsubstantiated RFC Findings

■ Plaintiff next claims that the ALJ improperly determined Plaintiff's RFC. Again, the court disagrees.

■ A plaintiff's RFC, or "residual functional capacity," is what he or she can do despite his or her limitations. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993) (citations omitted). The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision. Social Security Ruling 96–8p provides guidance on what the RFC should include:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. A failure to first

> make a function-by-function assessment of the claimant's limitations or restrictions could result in the adjudicator overlooking some of the claimant's limitations or restrictions.

Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7.

The ALJ made the following RFC assessment:

> The undersigned finds that as a result of her left upper extremity injury and fatigue and pain, the claimant is limited to work which requires lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, pushing and pulling up to 10 pounds frequently and 20 pounds occasionally, sitting up to 6 hours of an 8–hour day, and standing or walking up to 6 hours of an 8–hour day. The claimant has nonexertional limitations precluding all ladder, rope, and scaffold climbing, as well as concentrated exposure to heat and cold. As a result of left arm limitations, the claimant is restricted to work not requiring more than frequent (as opposed to continuous or occasional) fine and gross manipulation. . . .

In arriving at this assessment, the ALJ noted that Plaintiff self-reported extensive activities of daily living. He observed that Plaintiff leads a fairly active lifestyle, engaging in activities such as sewing and embroidering—activities "that require significant fine motor coordination and dexterity." These activities, as well as her other activities of reading and spending time at the bowling alley, require concentration and attention, and suggest that Plaintiff's pain and fatigue are not overwhelming. The ALJ also observed that Plaintiff leaves home almost daily for up to four hours at a time, visiting friends and relatives, shopping, and going to the bowling alley. The ALJ noted that while such an activity level does not directly translate into work capacity, it does suggest that

Plaintiff has the stamina for fulltime employment. He also found that Plaintiff's testimony of limited ability to sit, stand, and walk, and her testimony that she needed to lie down twice a day, was not consistent with the medical evidence or her lifestyle.

The ALJ also noted that the only restrictions imposed by physicians were those of Dr. Loewen. He explained that the RFC of lifting "20 pounds occasionally" was consistent with Dr. Loewen's limit of fifteen pounds with the left hand because Plaintiff could use her dominant right hand for a full range of activities, thereby increasing her lifting restriction with both hands. The ALJ also noted that his RFC was more restrictive than that suggested by the state agency medical consultants. He explained the discrepancy by stating that the consultants "did not provide sufficient consideration to the claimant's subjective allegations or to the recommendations of Dr. Loewen. . . ."

The court concludes that the ALJ properly discussed Plaintiff's ability to perform work-related activities and supported that discussion with medical evidence. He also explained the inconsistencies between his findings and the record. The court determines that the ALJ's RFC assessment is consistent with established legal standards and is supported by substantial evidence in the record.

### C. Improper Credibility Analysis

■ Finally, Plaintiff argues that the ALJ improperly discounted Plaintiff's credibility. The court determines that the ALJ did not err in conducting his credibility analysis.

■ Because the ALJ is " 'optimally positioned to observe and assess witness credibility,' " *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991)), the court "may

overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it," *Patterson v. Apfel*, 62 F.Supp.2d 1212, 1217 (D.Kan.1999) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992)). Credibility determinations made by the ALJ are generally treated as binding upon review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990).

■ When evaluating the credibility of a claimant's complaints of disabling pain, the ALJ should ask the following questions: "(1) whether [the][c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [the][c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the][c]laimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987)). In deciding whether the claimant's pain is disabling, the ALJ should consider the following factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

■ The ALJ thoroughly discussed why he found Plaintiff's allegations of disabling pain not credible. He noted the breadth of Plaintiff's self-reported activities, specifically mentioning sewing, em-

broidering, gardening, and playing cards and dice games, all activities that require dexterity and fine movements of the hands. He also observed that Plaintiff had made two contradictory statements: (1) she reported that she has never had a drivers license, and then later admitted that she had a license but had let it expire; and (2) she testified to having chest pain, but denied having chest pain to her physicians several times. "Subjective complaints of pain may be discounted if there are inconsistencies in the evidence as a whole." *Wiley v. Chater,* 967 F.Supp. 446, 451 (D.Kan.1997) (citations and internal quotation marks omitted).

The ALJ discussed Plaintiff's medication and the fact that Plaintiff has denied experiencing side effects from any medication, but has not complied with her doctor's recommendation to stop smoking. He also noted that Plaintiff's earnings history shows extended periods of nonwork, demonstrating a questionable motivation to return to work. All of these observations were proper and are supported by substantial evidence in the record.

The ALJ also questioned Plaintiff's motivation to return to work because she was receiving regular workers compensation benefits. Such an observation was improper, as the Tenth Circuit has noted:

> This statement was improper and undercuts the objectivity of the ALJ's opinion. Congress drafted the social security statutes with the expectation that claimants could receive both workers' compensation and disability benefits for on-the-job injuries. *See* 42 U.S.C. § 424a;

*Richardson v. Belcher,* 404 U.S. 78, 82–83, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). Thus, [Plaintiff's] receipt of such benefits has no bearing on her credibility. *Cf. Eichel v. N.Y. Cent. R.R.,* 375 U.S. 253, 255, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) ("[I]t would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act ... were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act.").

*Hinton v. Massanari,* 13 Fed. Appx. 819, 821 n. 1 (10th Cir.2001). But the court determines that this error alone is insufficient to warrant remanding the case to the ALJ. The ALJ's credibility analysis is supported by substantial other evidence in the record.

In sum, after reviewing the record, the court concludes that substantial evidence supports the Commissioner's decision to deny Plaintiff benefits and that the Commissioner did not deviate from established legal standards in making such decision.[1]

IT IS, THEREFORE, BY THE COURT ORDERED that the decision of the Commissioner is affirmed.

The case is closed.

Copies or notice of this order shall be transmitted to counsel of record.

IT IS SO ORDERED.

---

1. Plaintiff makes an additional argument in the portion of her brief requesting that the court make an immediate award of benefits. She argues that the vocational expert's testimony does not support a finding that a significant number of jobs exist that Plaintiff can perform. To the extent that Plaintiff's argument can be construed as a request for the court to reverse the ALJ's decision at Step

Five, the court declines to do so. "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy—not just a local area." *Gravitt v. Apfel,* No. 98–7156, 1999 WL 476026, at *2 (10th Cir. July 9, 1999) (quoting *Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999)) (internal quotation marks omitted).